# A. M. JENSEN, ADMX. v. JOHN C. PERRY.

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 12, 1889—Decided May 20, 1889.

(*a*) Jensen employed Perry to sell proprietary tablets under a written contract to continue for many years, with the provision that "said Jensen agrees to furnish said Perry with sufficient samples of said article, and printed matter in the nature of advertisements relating thereto, as the same may be called for by him, said Perry."

1. Under said contract the employer was not bound to submit to an unreasonable and unconscionable demand for samples, and what was a reasonable quantity, if the parties could not agree about it, was a question of fact for the jury and not to be determined at the will of the agent alone.

Before PAXSON. C. J., GREEN. CLARK, WILLIAMS and McCOLLUM, JJ.

No. 266 January Term 1889, Sup. Ct.; court below, No. 128 March Term 1887. C. P. No. 3.

On February 26, 1887, John C. Perry brought covenant against Dr. Carl L. Jensen to recover damages for the breach of a written contract, dated November 20, 1885, whereby said Jensen, the proprietor of the Crystal Pepsin Tablets, constituted said Perry his sole and exclusive agent for the sale of said tablets throughout the United States, on a certain commission on the gross receipts therefor, the contract to continue for forty-nine years, and containing the following paragraph:

"4. Said Jensen agrees to supply said Perry with sufficient samples of his said article, and printed matter in the nature of advertisements relating thereto, as the same may be called for by him, said Perry; but said Jensen is to be at no other costs or expense."

It was also provided that if the sales should not amount to more than 500 gross of bottles during the first year, Jensen might terminate the contract.

At the trial on April 6, 1888, the plaintiff proved the contract referred to, and that he had begun work thereunder on February 1, 1886; that he had extensively advertised the tablets in the papers, street cars, theatre bills, etc., and had sent circulars and samples to all druggists in the United States and Canada; that he had expended for advertising and office and traveling expenses $10,084.41, and received commissions under the contract amounting to but $4,223.37; that the defendant had furnished him 431,621 samples during February, March, April and May; that on July 26, 1886, he had written defendant asking for 100,000 sample vials, with printed matter relating thereto, to be sent him at once, adding "we have got to push things in order to sell the required quantity, and we cannot afford to lose a single day;" and that on August 3, 1886, he sent to the defendant another letter stating:

"Since my letter to you of the 26th ult., the necessity for samples is even more apparent. It is necessary for us to sell over 300 gross in the next six months, and to do it will require very hard energetic pushing of the goods directly among the people. Extensive sampling is the only method by which I can get such immediate results as to insure our selling the required quantity. The benefit to yourself from the large volume of business which would ensue from a well-directed sampling, should be sufficiently apparent to you without any urging

on my part. I want 100,000 samples immediately, and will want several hundred thousand more by October 15. The distribution will be immediate. Please send at once to office."

The plaintiff further showed that these requests were not complied with and that he received no samples from the defendant after June 1, 1886, and that on November 23, 1886, the defendant entered into a contract with the firm of Aschenbach & Miller in which he appointed them his agents with exclusive control of the sale of said tablets. Thereupon the plaintiff notified the defendant that his contract with Aschenbach & Miller was a breach of his contract with the plaintiff, and subsequently brought this suit.

The defendant opposed the plaintiff's recovery, on the ground, inter alia, that he had furnished to the defendant all the samples that could reasonably be expected from him.

Dr. A. W. Miller called:

The defendant offered to prove by the witness that the quantity of samples furnished to the plaintiff was more than a reasonably sufficient quantity for one year, according to the usual practice of the trade.

Objected to.

By the court: Objection sustained; exception.[2]

The court, FINLETTER, P. J., charged the jury in part as follows:

The defendant requests the court to charge [inter alia]:

3. Under the provisions of the contract the defendant was required to furnish only a reasonably sufficient quantity of samples.

Answer: Refused.[5]

And I charge you: What is set down in this contract, to be done by either of the parties, is the law which controls their actions in relation to it. Before the plaintiff can recover upon the contract, it is essential that he should show that he performed his part of the contract to the fullest extent, or show that he was prevented from performing it by the conduct of the other party.

[Now, substantially all that is required to be done by the plaintiff, is set forth in three or four lines, and that is, that he was to use his best endeavor to introduce this specific article

Charge of Court below.

in the community. You will observe that there is nothing in the contract as to how; by publication, by samples or in any other way. He was simply to use his best endeavor, and what he did was to depend entirely upon himself. If the defendant had intended that he should .control the efforts of the plaintiff in that regard, it should have been stated in the contract; and as it does not appear, the plaintiff had no right to take any instruction whatever from the defendant. The whole matter was submitted to his energy and business capacity, and was not to be' controlled by any one else.] [6] . . . . .

[The defendant agreed to furnish samples to the plaintiff, whatever the plaintiff should require and as he required them. Now the evidence of the plaintiff is, that up to the end of May, the defendant did comply with the requirements that he made, but from that time onward he absolutely neglected and failed to furnish any samples, or any of the matters which he . had agreed to furnish. If that be so, and I do not understand that it is at all contradicted by the defence that he failed to furnish samples after May, then that is a breach of this contract.] [7] [Then the plaintiff had a right to continue the contract or to cease entirely. Inasmuch as this would be a breach of the contract, he is entitled to recover all the expenses to which he was put in endeavoring to perform his part of the contract.] [8]

The jury returned a verdict in favor of the plaintiff for $6,387.52. A rule for a new trial. having been discharged, judgment was entered, when, the defendant having died, his death was suggested upon the record and Anna M. Jensen, his administratrix, substituted, who then took this writ, assigning as errors, inter alia:

2. The refusal of defendant's offer.[2]
5. The answer to defendant's point.[5]
6–8. The portions of the charge embraced in [ ] [6 to 8]

*Mr. William F. Johnson* (with him *Mr. F. Carroll Brewster*), for the plaintiff in error.

*Mr. William S. Stenger*, for the defendant in error.

OPINION, MR. JUSTICE WILLIAMS:

The contract sued on in this case made Perry the "sole and exclusive agent" for the introduction of Dr. Jensen's Crystal Pepsin to the people of the United States. It defined the powers and duties of the agent, fixed his compensation, and contained, inter alia, the following stipulation: "Said Jensen agrees to supply said Perry with sufficient samples of his said article, and printed matter in the nature of advertisements relating thereto, as may be called for by said Perry."

This contract was made in November, 1855. Operations were begun under it by Perry about the first of February, 1886. By the first of June, or within about four months, Perry had called for and been provided with 431,621 sample bottles containing an average of nine tablets each of Dr. Jensen's Crystal Pepsin, worth at the ordinary selling price $31,794. In August of the same year Perry wrote to Dr. Jensen, "I want 100,000 samples immediately and will want several hundred thousand more by October 15. The distribution will be immediate. Please send at once to office." Dr. Jensen thought this demand was unreasonable. He insisted that he had already furnished more than a sufficient quantity of samples for the work done and doing by Perry, and declined to furnish the samples demanded. Perry treated this as a violation of contract, suspended the enterprise of introducing the Crystal Pepsin to the people of the United States, and brought this action to recover damages.

On the trial, the defendant offered to prove that the quantity of samples which he had furnished prior to the demand in August, 1886, was more than reasonably sufficient for the whole year's operations. This offer was rejected by the court upon an interpretation of the contract which is fully stated in the charge to the jury. The learned judge said, "The defendant agreed to furnish samples to the plaintiff, whatever he should require and as he required them." In other words, he held that the agreement to furnish "sufficient samples" meant that Jensen should furnish whatever Perry might choose to require of him, without regard to the business actually done, to the usages of the trade, or the judgment of a jury. If this is correct Dr. Jensen certainly made a very unequal and unfortunate contract with his agent. Upon this view of it, his

liability has no bounds except such as the agent may set. He cannot say that his agent is unreasonable, or oppressive. He cannot ask a jury to say so. He has only to furnish whatever the agent demands of him.

We cannot agree to this exposition of the contract. The agent may demand what is fairly and reasonably sufficient for the purposes of his undertaking, and no more. He is bound to exercise good faith towards his principal. If he fails to do this, or if he makes unnecessary and oppressive demands upon him, he violates the contract and becomes himself a wrong-doer. The employer is not bound to submit to an unreasonable and unconscionable demand by his agent, nor is the question what is reasonable and conscionable to be determined by the interested and unfaithful agent alone. What is a reasonable quantity of samples for the purposes of the contract, is, if the parties cannot agree about it, a question of fact to be settled by a jury. The offer made in the court below by Dr. Jensen to show that the demand made upon him was unreasonable and oppressive, and that he had furnished, before it was made, a larger quantity of samples than was reasonably sufficient for the whole year's operations by his agent, if those operations had been conducted with businesslike methods and with fairness towards him, should have been admitted.

The first, second, fifth, seventh, and eighth assignments of error are sustained.

The judgment is reversed, and a venire facias de novo awarded.