JOHN C. PERRY v. A. M. JENSEN, ADMX.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 22, 1891—Decided May 4, 1891.

(a) Jensen employed Perry as his agent to sell proprietary tablets, under a written contract to continue for many years, with a provision that

Statement of Facts.

" said Jensen agrees to furnish said Perry with sufficient samples of said article, and printed matter . . . . . relating thereto, as the same may be called for by him, Perry."

(b) Perry was made the " sole and exclusive agent for the sale of said article, on the continuing condition that he, said Perry, shall use his best reasonable endeavors to introduce and sell the same throughout the United States, and shall devote his entire time and attention to that purpose."

(c) At the end of the first year, Jensen entered into a contract with others to act as his exclusive agents; and, in an action by Perry for the breach thereby of the contract with him, Jensen defended on the ground that Perry's demands for samples were unreasonable, and his methods of distribution inefficient:

1. In such case, the plaintiff had the right to demand samples in quantity fairly and reasonably sufficient for the purposes of his undertaking, and what was a reasonable quantity, when the parties could not agree about it, was a question of fact to be settled by the jury: Jensen v. Perry, 126 Pa. 495.

2. Upon the questions of the reasonableness of the quantity of samples furnished and demanded, and of the efficiency or inefficiency of the plaintiff's method of distribution, the opinions of witnesses having experience in introducing articles to the public by the distribution of samples, were admissible in evidence.*

3. To meet the testimony of the plaintiff, that he had distributed a certain number of samples in Philadelphia, it was competent to admit testimony that at the time the distribution was alleged to have been made, a witness had made an investigation but could find none, but not that he had complained thereof to the defendant.

4. That the plaintiff was ignorant or unskilful in the business he undertook, did not entitle the defendant to a verdict; for the practical question was, whether the plaintiff had performed his part of the contract, and whether he did or did not was a question to be determined by the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 148 July Term 1887, Sup. Ct.; court below, No. 128 March Term 1887, C. P. No. 3.

On February 26, 1887, John C. Perry brought covenant against Dr. Carl L. Jensen, to recover damages for the breach of a written contract, dated November 20, 1885, reciting that said Jensen was the proprietor and manufacturer of Crystal Pepsin, under letters patent, and providing as follows:

---

* As to when the opinions of witnesses are inadmissible, see Graham v. Penna. Co., 139 Pa. 149.

" 1. Said Jensen hereby appoints said Perry, his sole and exclusive agent for the sale of said article, on the continuing condition that he, said Perry, shall use his best reasonable endeavors to introduce and sell the same throughout the United States, and shall devote his entire time and attention to that purpose.

" 2. Said Jensen agrees to pay said Perry, in consideration of his services, and of the payment by said Perry of the costs of introducing and selling said article, a commission of one third of the gross receipts by said Jensen from sales in North America only of said Crystal Pepsin Tablets, from any and all sources whatsoever, less five per centum of such gross receipts.

" 3. It is understood and agreed that if the sales of said Crystal Pepsin Tablets during the first year, and after the date hereof, shall not amount to more than five hundred gross of bottles or packages of said tablets (each containing about seventy-five two and a half grain tablets), and if such sales shall not amount to more than one thousand gross of like bottles or packages, during any year after said first year, the said Jensen may, at his option, terminate this contract.

" 4. Said Jensen agrees to supply said Perry with sufficient samples of his said article, and printed matter in the nature of advertisements relating thereto, as the same may be called for by him, said Perry ; but said Jensen is to be at no other expense or cost.

" 5. Said Perry shall be entitled to receive the amount of his commission, from time to time as the same shall be earned.

" 6. This contract shall continue for a period of forty-nine years from and after the date hereof, . . . . ."

The breach of the contract assigned was that on November 23, 1886, the defendant had entered into a contract with Aschenbach & Miller, in which he constituted said firm his agents with exclusive control of the sale of the said tablets from that date.   Defence was made on two grounds : (1) That the plaintiff, after making unreasonable demands upon the defendant for sample tablets and failing to receive them, did no business for the defendant under the contract after August 3, 1885 ; (2) that the plaintiff's methods of distributing the samples supplied were inefficient, and not such as he should have adopted.

At the trial, on April 6, 1888, there was a verdict for the plaintiff for $6,387.52.   The defendant having died, Anna M.

Statement of Facts.

Jensen, his administratrix, was substituted, and took a writ of error to No. 266 January Term 1889, Sup. Ct.; whereon, on May 20, 1889, the judgment was reversed with a venire de novo: Jensen v.Perry, 126 Pa. 495.

At the second trial, on February 17, 1890, it was made to appear that during the months of February, March, April and May, 1886, the defendant had furnished to the plaintiff 431,621 samples, with printed matter in the nature of advertisements; that for the distribution thereof the plaintiff employed chiefly the American District Telegraph Company, which distributed, as was alleged, to names found upon the voting lists, 113,040 in Philadelphia, 131,042 in New York, 62,598 in Brooklyn, 25,000 in Baltimore, 36,000 in St. Louis, and 48,666 in Chicago; that on July 26, 1886, the plaintiff demanded 100,000 samples in addition, and these not being supplied, he wrote on August 3, 1886, repeating his demand, and stating he would want several hundred thousand more by October 15th; that defendant declining to comply with the demand and the plaintiff ceasing operations, the defendant subsequently entered into the new contract: See Jensen v. Perry, 126 Pa. 496.

To establish his defence, the defendant called Elias P. Goodwin, who testified that he had been in the advertising business for twelve years; distributed advertising matter to the public, lawyers' directories, other directories, and special advertising for trust companies; knew the Amer. Dist. Telegraph Co. and its method of distribution, and had done business through it: "Q. Do you regard the distribution of an article like Dr. Jensen's Pepsin Tablets, through the medium of the American District Telegraph Company, or any other mode over which this individual has no control, as the best reasonable endeavor of the individual to get that article to the public?" Objected to by plaintiff.

By the court: Objection sustained; exception.[1]

Mr. Johnson: "I now offer to prove by the witness that, at the time when this distribution in the city of Philadelphia was alleged to have been made, he made an investigation but could find none, and that he went to Dr. Jensen and complained to him that the work was not being done." Objected to.

By the court: Objection sustained; exception.[2]

Henry E. Lovey called for the defendant testified that he

Charge of Court below.

had experience in the distribution of pamphlets, and medical articles for general consumption; had distributed for Dr. Palen, Drs. Starkey & Palen, for the Real-Estate Investment Company, and for Mr. Goodwin; had distributed in Chicago, Baltimore and in Ohio: "Q. Is or is not 431,000 samples of medicine, like this cure for dyspepsia, a reasonable or unreasonable number for distribution in any one year?" Objected to.

By the court: Objection sustained; exception.[3]

Herbert L. Ford, called for the defendant, testified that he had an interest in a pepsin preparation and also in a food preparation, and had distributed samples throughout the United States, by persons in his employment and under his direction, and personally in localities; the pepsin was delivered to druggists, and the food to the trade and in localities: "Q. State whether 431,000 samples of an article like Jensen's Pepsin Tablets, with which you are familiar, would, or would not be a reasonably sufficient number for any one year, for popular distribution?"

By the court: "I do not think this witness has knowledge to testify upon the subject as an expert; therefore, I will exclude him;" exception.[4]

One Brill, in the employ of the defendant at one time, had been called by the plaintiff to testify as to the cost of making the pepsin tablets. To meet his testimony, Johan Sunde was called by defendant and testified that he had experience in the manufacture of pepsin; had been with Dr. Jensen and the Carl L. Jensen Co., as assistant chemist, knew Mr. Brill and had worked with him: "Q. State whether he is a competent and reliable pepsin maker." Objected to.

By the court: Objection sustained; exception.[5]

At the close of the testimony, the court, GORDON, J., charged the jury in part as follows:

You will therefore observe, gentlemen, that the duties in this case were, upon the part of Perry, to give his best reasonable endeavors and skill to the business of distributing and selling these tablets; to give his entire time and attention to it, to pay the cost, and to put Dr. Jensen to no other cost. Upon the part of Dr. Jensen, his duties were to constitute Perry his sole agent during the term of the contract, and ap-

point no other, and to furnish sufficient tablets for Perry to do his work.

Gentlemen of the jury, upon the part of one or the other of these two there was a breach. Up to July, or thereabouts, Dr. Jensen furnished over 400,000 samples; he then declined to furnish any more. He declined because, he said in his testimony which was read to you, that the cost would be too great, that he had furnished enough already; and because he wanted Perry to do additional advertising in the newspapers. By the allegation of some witness in this case there was something said about the manufacture of these tablets in the summer time. Dr. Jensen's testimony, which was read to you, contained no such allegation, as I recollect. He based his refusal upon the unreasonableness of the demand, and his dissatisfaction with Perry for not advertising more. Now, gentlemen of the jury, Dr. Jensen would have been justified in that course only if the demand of Perry was unreasonable and not in accordance with the contract, or if Perry was not performing his other duties in connection with the contract. That is a question solely for you, and it is to be determined from the evidence and also from the law, as I shall give it to you in a moment.

The contract is the law of the case. So far as it is clear and explicit it is absolute. You have no right, I have no right, the law does not attempt, to introduce new elements into a contract when its terms are clear and explicit. So far as this contract on its face contains indubitable matter that may be clearly read, you and I have no right to reform it. Paternalism in government has not yet got to the extent of preventing men from contracting as they please, so long as their contract is not against public policy or good morals. We may not reform a contract that is clear and explicit. . . . .

Jensen's part, so far as this contract is concerned, was to divide the profit, supply a sufficient number of tablets, and not break the contract so far as the sole agency was concerned. This was a new business, which was to be introduced. It was to be introduced throughout the United States. That was the contract that Perry undertook. He demanded 1,200,000 tablets altogether for the year. It was either argued to you, or possibly alluded to in the testimony, that that demand was in-

tended to force a breach of the contract by Jensen, because Perry was tired of it; and was an after-thought, when three months had developed that 500 gross could not be sold. You will say whether that is true or not, gentlemen; but it is only right to say to you that the evidence in this case is undoubted; that the first, or among the very first contracts that Perry made, in connection with his duties, was with an envelope company for 1,200,000 envelopes, which would seem to indicate that at the inception of business he conceived that such would be the number needed.

I do not know, gentlemen, that there has been in the case a statement made of the exact figures, which any perfectly similar preparation required for its original introduction in this manner. I say I do not recollect whether there was any such testimony in the cause. There was some pointing in that direction. There was testimony as to what is now done in connection with Schenk's medicinal remedies and others. But I do not recollect that there is any testimony as to how many samples were expended in the first year in introductions throughout the United States, simultaneously, of a similar medicine to this. If there was, you will recollect it. [I simply say all this, because what you must determine is this, whether 1,200,000 tablets for distribution as samples throughout the United States, in one year, was unreasonable and oppressive upon Dr. Jensen.] [6]

If it was unreasonable or was oppressive, that is an end of the plaintiff's case. No man may exact an unreasonable compliance with a contract. If, on the other hand, it was not unreasonable or oppressive, then the plaintiff committed no breach so far as that was concerned, and Dr. Jensen had no right to refuse the tablets. [Unquestionably, the distribution of the tablets was an important element to both parties. Sales would result from publicity. Publicity was to be obtained by distribution. It was mutually beneficial that the tablets should be distributed, and so far as the expense is concerned, that was the only expense which Dr. Jensen undertook. Therefore, you will say whether such a distribution was unreasonable. If it was, then Jensen could refuse to comply, and such demand would be a breach and a wrong upon Perry's part.] [7]

I do not recollect that it appears in evidence that Dr. Jensen

Charge of Court below.

said how many he would furnish. I think it is argued to you, and it is fairly inferable from the testimony, that the amount already given by Jensen was claimed to be sufficient for the year, 400,000. [Upon Perry's part, it is contended that there was an absolute agreement outside of the written one, to furnish 25,000 a week; and his contracts with his distributors, the American District Telegraph Company, etc., were made upon that basis. Dr. Jensen's testimony, which was read to you, is to this effect: that he said to Perry that he had machinery which could make 25,000 a week, and that he went no further. There was also a letter read to you in which that number was again alluded to by Dr. Jensen.] [8] You will see from all the evidence whether there was a contract specifically to furnish 25,000 a week. Of course, if that was the specific contract, the question of the sufficiency of the demand does not arise. If there was no such specific contract, then you must determine the question whether the demand was an unreasonable one or not.

There has been testimony as to the cost of the manufacture of pepsin, and the production of these tablets. There has been a great deal of testimony, and much time has been consumed upon that subject. It has but a very limited bearing on this case, and that is simply this: It is introduced to show you what cost Dr. Jensen would have been put to had he complied with this demand, and you are asked because of that cost, to say that the demand was unreasonable. That is the only relevancy that this element of cost has to the case. . . . .

If you should find that the plaintiff in this case devoted his best skill, his best endeavors to the business, and his time and attention, all his time and attention, and that the request for these samples was not unreasonable and oppressive, your verdict should be for him. If you find that the demand was unreasonable, he cannot recover. If you find that he did not devote his best endeavors to the business, he cannot recover. If you find that he did not employ all his time and attention to the business, he cannot recover.

If you should find these propositions in his favor, and the two others which go to the making up of his case, that the demand was reasonable and the number only a sufficient one, you will be brought to the question of damages; and I charge you

Charge of Court below.

that if the plaintiff is entitled to recover, he is entitled to re-
cover the expense he was put to in attempting to comply with
his part of the contract, together with reasonable compensation
for his own services, less such amounts as he received. In
other words, he is entitled to compensation, to be compensated;
these are his damages. Of course, what he expended, all that
he expended, or became liable for, in performing his part of the
contract, is damages, as well, also, as remuneration for his ser-
vices. . . . .

[There was not a shadow of evidence anywhere that this
business failed because Perry had not the money to pay the
expense of distributing. On the contrary, he distributed every-
thing that was sent to him, so far as this case goes. The sums
of money which he has not paid, you have heard stated in the
evidence. Dr. Jensen never complained of that. He was
sworn once and had a chance to tell the story. He never com-
plained that Perry was unable to distribute the samples. As a
matter of fact, Perry had distributed all that he received.] [9] . . . .

I am asked to charge you specifically by counsel for the re-
spective parties as follows : On the part of the defendant :

4. If the jury should find from the testimony that the plaint-
iff, when he made this contract, was ignorant or unskilled in
the business about to be entered into, and thereafter refused to
take advice from others having a knowledge of the business
and things necessary to be done, it was a breach of the contract
on his part, as it was his duty to his principal to use every ac-
cepted method of introducing the article. Upon such finding,
your verdict should be for the defendant.

By the court : Upon that I instruct you, gentlemen of the
jury, he was to use his best endeavors. As I have already said,
he did not agree in this contract that he possessed the highest,
the best skill, or any superior degree of skill in connection with
this business. Dr. Jensen sought his own agent. He selected
Perry, and Perry was to give all his time and attention, and
his best endeavors to the business ; and you will say whether
or not, what he did do, or did not do, constituted a compliance
with this contract. So far as this point is concerned, the rea-
sonableness of the means employed by Perry of employment [?]
is a question of fact, and therefore I decline the proposition. [10]

5. If the jury should find from the testimony that the plaint-

iff stated to Dr. Jensen that he had a friend worth about a million dollars, who would go in with him, and that that fact induced the contract; and that thereafter no such person did enter into the business with him, and the plaintiff himself had not sufficient money to carry out his part of the contract, and by reason thereof the enterprise failed, then he cannot recover.

By the court: I decline to charge you as requested in that proposition, as there is no evidence in the case upon which you can come to any such a conclusion.[11]

6. The burden of the proof rests on the plaintiff to show that Dr. Jensen failed to furnish sufficient samples, etc.; that, by reason of such failure, the plaintiff was prevented from effecting sales of 500 gross as required by the agreement; wherefore, if the jury should find from the testimony that the failure to furnish more samples, as called for, was not the reason that the plaintiff failed to sell 500 gross, and that there was another reason why he failed, then the plaintiff cannot recover, and the verdict should be for the defendant.

By the court: I do not understand that proposition. It is not clear, and is uncertain as to some other unexpressed reason for failure, and therefore I decline to charge you upon it at all.[12]

—The jury returned a verdict for the plaintiff for $8,545.81. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1–5. The refusal of the defendant's offers.[1 to 5]

6–9. The portions of the charge embraced in [ ] [6 to 9]

10–12. The answers to the defendant's points.[10 to 12]

*Mr. Wm. F. Johnson*, for the appellant.

*Mr. Wm. S. Stenger*, for the appellee.

OPINION, MR. JUSTICE GREEN:

When this case was here before, Jensen v. Perry, 126 Pa. 495, we held that it was error to reject proof that the quantity of samples furnished by Jensen, prior to the demand in August, 1886, was more than reasonably sufficient for the whole year's operations. We further said that "the agent may demand what is fairly and reasonably sufficient for the purposes of his

undertaking, and no more. . . . . What is a reasonable quan-
tity of samples for the purposes of the contract is, if the parties
cannot agree about it, a question of fact to be settled by a
jury." Of course, such a question would have to be determined
by testimony, and the testimony of persons acquainted with
the business of distributing samples of goods of this class
would be essential to the proper information of the jury. In
point of fact, such testimony was delivered on the trial, but
some of that which was offered by the defendant was rejected,
and of this complaint is made more especially in the third and
fourth assignments of error.

To the witness Lovey the defendant put the following
question: " Q. Is or is not 431,000 samples of medicine like
this, for the cure of dyspepsia, a reasonable or unreasonable
number for distribution in any one year?" This was objected to,
but no ground of objection stated, and the objection sustained,
but for what reason is not stated. If the witness was incom-
petent because he had not shown sufficient experience to be
able to testify, his rejection was proper; but if that does not
appear, the question should have been admitted. Upon turn-
ing to his preliminary testimony on the subject of his compe-
tency, we find that he testified he had been in the advertising
business since 1865; that he had experience in the distribution
of pamphlets, and medical articles for general consumption;
that he had distributed pamphlets for Dr. Palen, Drs. Starkey
& Palen, for the Real-Estate Investment Company, and all of
Mr. Goodman's publications; that his experience as a distrib-
utor had extended beyond Philadelphia, and that he had dis-
tributed samples and pamphlets in Chicago, Baltimore, and in
Ohio. We cannot say of such a witness that he was entirely
incompetent to testify in answer to the question propounded.
Possibly his experience was not as great or his judgment as
good as that of other witnesses having a larger experience, but
that would be a matter to be determined by the jury after his
testimony was heard. He would not be incompetent, because
he did have experience in the matter of advertising medical
articles, and in the distribution of samples and pamphlets relat-
ing to them. We think it was error, therefore, to reject the
question altogether.

And so, also, as to the fourth assignment. The witness,

Opinion of the Court.

Herbert L. Ford, testified that he had had experience in putting out articles for general and special consumption, by sample, advertising, and otherwise. He said further: "About January 1, 1886, I was retained as general manager of the New York & Chicago Chemical Company. During the succeeding year, the article of infants' food was brought to my attention, and a copartnership formed to place it on the market. In the pepsin business, we did a large amount of sampling in the trade among the druggists. In the food business, we made distribution of sample packages from house to house, worked through the mail, and by other methods. . . . . We sent circulars and have distributed samples, attended public exhibitions, and made displays of preparations, and had contests to show their efficiency. . . . . We have distributed, I should suppose, at least a half million circulars throughout the United States, from first to last." In reply to questions by the court, the witness said he had not distributed from house to house all over the United States, but he had distributed throughout the United States, not by universal sampling, but in localities; that he was interested both in the food and pepsin preparations, and that the pepsin was delivered to the druggists, and the food to the trade and in localities. The learned court below thought the witness had not sufficient knowledge to testify as an expert, in reply to the question as to the sufficiency of 431,000 samples of an article like Jensen's Pepsin Tablets as a reasonable quantity for distribution in any one year, and rejected him as a witness. We think the witness was competent, and that the objection of want of sufficient experience or knowledge would go to the effect of his testimony, and not its competency. We sustain the third and fourth assignments.

The plaintiff had proved that he did a large part of his distribution through the American District Telegraph Company. The defendant disputed the efficiency of that mode of distribution, and offered to sustain his contention by the testimony of a witness, Goodman, who had testified to his experience as an advertiser and distributor, and to his acquaintance with the methods pursued by the company in question. His testimony was rejected. It could hardly have been for lack of knowledge and experience; and, as the offer was to prove that that method of distribution was not the best reasonable endeavor of the

plaintiff to make distribution, it could not be said that the offer was irrelevant. By the terms of the contract, Perry was to use his " best reasonable endeavors to introduce and sell " the pepsin throughout the United States, and to devote his entire time and attention to that purpose. His methods of distribution, therefore, were directly in issue, and were liable to be impeached by the defendant if that could be done. We think the witness had sufficient knowledge and experience from which to testify on this subject, and that it was error to reject the question propounded under the first assignment.

We think the offer covered by the second assignment should have been received, as its tendency was to show that, whatever methods of distribution were adopted by the plaintiff, they were not efficient, so far as the city of Philadelphia was concerned. The complaint of the witness to Dr. Jensen, however, would not be competent, and that part of the offer should be rejected. The second assignment is sustained, except as to the communication to Dr. Jensen.

The fifth assignment is not sustained. The question of Brill's competency and reliability as a pepsin maker is not involved in this controversy, and it is therefore irrelevant.

The sixth assignment is not sustained because the learned court below, in other parts of the charge, correctly said to the jury that, if the plaintiff's demand for more samples was unreasonable and oppressive upon the defendant, he could not recover merely because the defendant refused compliance with such a demand; and the number already furnished, 400,000 and upwards, was stated in the charge. Whatever was demanded beyond that was left to the jury as being within their province to determine, in support of the allegation that the number demanded was unreasonable. There was some evidence in the case as to the reasonableness of a demand for 1,200,000, and the court simply said in this part of the charge that the jury must determine whether such a number would be unreasonable. It is true, it does not appear that such a number was specifically demanded by the plaintiff, but he did call for several hundred thousand more than the 431,000 already delivered, in his letter of August 3, 1886.

We are obliged to sustain the seventh assignment, because, literally the contract did require that, in addition to the sam-

ples, Dr. Jensen should furnish "printed matter in the nature of advertisements relating thereto," and that was an additional expense to which he was subject.

A similar reason requires us to sustain the eighth assignment. The learned court was slightly in error in stating Jensen's testimony to the jury. His testimony, as actually delivered, does not show that "he said to Perry that he had machinery which could make 25,000 a week," but only that he "could construct machinery to make 25,000 samples per week." As this discrepancy might be material with the jury in considering the quantity which the defendant was reasonably bound to furnish, we cannot say it was harmless to the defendant for the court to state Jensen's testimony on the subject incorrectly in the charge.

The ninth assignment is not sustained. We are not referred by the appellant to any testimony tending to show that the statement of the court in this part of the charge was incorrect, and we have not discovered any.

We see no error in the answer of the court to the defendant's fourth point, and therefore dismiss the tenth assignment. It would not follow that the verdict should be for the defendant if the plaintiff was ignorant or unskilled in the business, and refused to take advice from others having a knowledge of the business. The practical question for the jury was whether Perry performed his part of the contract, and whether he did or not was to be determined by the jury, and so the court charged in answer to this point.

The same consideration is applicable to the defendant's fifth point. It was not a question whether the plaintiff told the defendant that he had a friend worth a million, who would go in with him, and that no such person did go in with him, but whether or not he performed his part of the contract. The considerations which pertain to that subject were fully and correctly expressed in the answers of the court to the ninth and tenth points of the defendant, and in the general charge. The eleventh assignment is not sustained.

There was no error in the answer of the court to the defendant's sixth point, and the twelfth assignment is not sustained.

Judgment reversed, and new venire awarded.